**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

CAROL A. WINES,

                    Plaintiff,

v.                                            CIVIL  ACTION  NO.  3:10-1012

THE UNITED STATES OF AMERICA,

                    Defendant.

**MEMORANDUM OPINION AND ORDER**

Mrs. Wines brought this civil action under the Federal Tort Claims Act (FTCA).  28 U.S.C. §§ 1346b and 2671-2680.  She alleges that a physician employed by Family Care, Dr. Ciliberti, was negligent in his care and treatment of her, causing her to suffer serious injuries.  Because Dr. Ciliberti is a deemed employee of the United States, the action proceeded against the United States as a substituted defendant.  On December 13, 2011, the Court conducted a bench trial.  Following the submission of the evidence, the United States orally moved to dismiss the action as barred by the two-year statute of limitations.  The Court took that motion under advisement and directed the parties to brief the issue. Having considered the evidence, the Court **FINDS** in favor of the Defendant and **GRANTS** judgment in its favor.  Having decided the facts on the merit, the Court **DENIES, as moot,** the Government's motion to dismiss, finding it unnecessary to resolve the disputed application of the statute of limitations.[1]

---

[1]Considering the medical ordeal Mrs. Wines has suffered and the ensuing litigation over the
(continued...)

The parties agreed that this action is controlled by the substantive laws of West Virginia, where the events took place. Thus, the West Virginia Medical Professional Liability Act (the MPLA), W. Va. Code § 55-7B-1 et. seq. (2003), and the common law of the State apply and are not disputed. As the trier of fact in FTCA actions, the Court, not a jury, must decide the facts and apply the law accordingly.

**FACTS**

Mrs. Wines was a patient of Family Care preceding and during 2007. She sought care in June 2007, for back and abdominal pain and was scheduled to see Dr. Ciliberti, a gynecologist, for possible endometriosis.[2] After a course of conservative treatment was unsuccessful in alleviating her symptoms, Dr. Ciliberti advised her of the options for treatment - either surgery or other drugs - and she chose surgery. The surgical procedure planned was a laparoscopically-assisted vaginal hysterectomy with bilateral salpingo-oophorectomy[3] to be performed by Dr. Ciliberti.

She was admitted to Charleston Area Medical Center (CAMC) on August 22, 2007. The surgery commenced as planned but Dr. Ciliberti encountered dense scar tissue adhesions as well as endometriosis and decided to convert the surgery from laparoscopic to an open incision in her

---

[1](...continued)
past year and one-half, she deserves a ruling on the merits of her claim. Though the United States might not be procedurally barred from the lateness with which it sought to dismiss based on the statute limitations, the Court finds that a substantive decision based on the evidence is the preferred basis on which to decide the claim.

[2]Abnormal growth of cells from the lining of the uterus which can develop into adhesions or lesions.

[3]The surgical removal of the uterus, fallopian tubes, and ovaries using laparoscopy, a minimally invasive surgical procedure, as opposed to an open incision.

abdomen.  Another surgeon was called in to assist temporarily, and Dr. Ciliberti completed the procedure.  She remained in the hospital until August 25, 2007, in what seemed to be a uneventful post-operative recovery.

On August 30, 2007, she returned to Family Care complaining of fever, painful urination, and backache.  An antibiotic was prescribed and a urine culture was obtained.  Then, in the early hours of September 1, 2007, she went to the CAMC emergency room, again with fever and pain but now with what was characterized as a "disgusting" vaginal discharge that seemed to include stool matter.  She was quickly diagnosed with a colovaginal fistula.[4]  Unfortunately, her course of treatment was complicated and left her with a permanent colostomy.  She has undergone numerous surgical procedures since then, and suffered greatly with physical pain, mental anguish and other injuries resulting from the fistula and its effects.  Despite extensive medical treatment, she is left with substantial limitations and lingering injures which have greatly diminished her quality of life.

Through her testimony and that of her medical expert, Dr. Kent Miller, Mrs. Wines asserts that Dr. Ciliberti was negligent in his treatment. Though her expert particularized the specific deviations from the standard of care, the claim boils down to a fundamental proposition - that Dr. Ciliberti should have realized that the extensive endometriosis and scar tissue made this proposed surgery very risky and that Dr. Ciliberti must have accidently cut into the wall of the uterus, allowing fecal matter to divert into her vagina.  Dr. Miller testified that, with her medical history, Dr. Ciliberti was too quick in deciding to recommend this surgery; then performed it negligently,

---

[4]An abnormal connection, or opening, between the colon and the vagina through which feces may escape into the vagina.

using the wrong equipment to isolate, cut out and remove the organs and endometriosis tissue; and then failed to sufficiently inspect her internally following the surgery to rule out any fistula.

In response, the United States relied on Dr. Larry Griffin as its expert.  He opined that Dr. Ciliberti did not cause of the fistula, that the surgery was performed appropriately, and that the fistula likely developed over the post-operative period.  While both expert are board-certified gynecologists, I place greater weight on Dr. Griffen's testimony for two reasons.  First, his level of actual experience in performing this type of procedure is both greater and more recent.  Second, in view of all other evidence, his opinions simply make more sense.

Dr. Griffin testified persuasively that Dr. Ciliberti met the standard of care in all respects. He outlined the history and course of treatment prior to Dr. Ciliberti recommending surgery, and found it consistent with the standard of care.  During the surgery, Mrs. Wines was found to have extensive endometriosis and dense scar tissue throughout her abdomen.  Dr. Griffin opined that the extent of this abnormal tissue cannot be ascertained before the procedure and that Dr. Ciliberti's choice of instruments and method of identifying and removing tissue were within the standard of care.  Encountering dense adhesions and bleeding made laparoscopic surgery more difficult, so Dr. Ciliberti converted the procedure  to an open incision and called in a surgeon to assist.  Despite the procedure being more challenging than expected, there is nothing in the operative note, nor any subsequent observation, suggesting he had inadvertently injured the colon during the procedure.

This latter point is critical.  Both experts explained that when a colonic fistula occurs, fecal matter is often readily observable, through smell or appearance.  Here, no such observations were made during the surgery.  Further, a surgically-placed drain did not reveal anything suggestive of a fistula through her post-operative discharge.  In fact, the evidence leads to the conclusion that this

fistula developed after, not as a product of, the surgery.  While Mrs. Wines had some minimal discharge from her vagina after she left the hospital, it was on the evening of August 30, 2007, that the distinctive discharge began.  This discharge was produced by the fistula, which allowed stool material to flow from her colon into her vagina.  Through her expert argued that it may have taken this nearly a ten day period to become symptomatic, the more likely explanation was offered by Dr. Griffin.  Mrs. Wines' tissue was described as friable and considerably inflamed when the surgery was performed.  Dr. Griffin opined that the most likely cause of the fistula was decreased blood flow in the tissue, devascularization which later developed into a fistula.  Dr. Damien Maxwell, the surgeon who repaired her fistula, noted this condition when he operated on Mrs. Wines and acknowledged that fistulas may develop as a result. Dr. Griffen also considered that the description of the fistula, both its size and its smooth edges, made it unlikely to have been caused by the surgeon penetrating the colon.  Based on this evidence, the Court finds that the colonic fistula most likely developed as a result of the poor condition of the tissue, not because the doctor cut the colon during surgery.

Lastly, Plaintiff asserted that Dr. Ciliberti failed to fully examine her during the office visit of August 30, 2007, and missed the signs that a serious fistula had developed.  I disagree.  First, her symptoms - mild, intermittent fever; some abdominal tenderness; and even spotty discharge - were not such that a more thorough exam was required or would have revealed a fistula..  Further, it was after that office visit that a pronounced and different vaginal discharge began, one which led to her going to the emergency room and being hospitalized.  Repair surgery was not performed until September 4, 2007, three days later, but she makes no claim that this delay affected her outcome.

Thus, there is no evidence of post-operative negligence in diagnosis nor did the delay affect her subsequent course.

Mrs. Wines' life has been dramatically altered by the poor result she sustained from the surgery and subsequent complications.  However, Dr. Ciliberti, and therefor the United States as his employer, could not guarantee the success of the procedure.  Rather, his duty was to use the degree of care and skill of a reasonably competent physician performing this operation on a patient like Mrs. Wines. The fistula which developed over the course of her post-operative recovery was an unfortunate complication and not the result of a failure to use due care by her doctor.

Having found in favor of the United States, the Court **GRANTS** judgment in its favor and against the Plaintiff, and **DISMISSES** this Complaint.  The Clerk shall forward a copy of this written findings and opinion to counsel of record.

ENTER:        January 11, 2012

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE